Ann WALKER, Appellee,

v.

Honorable Betty RUSHING, Chief Justice, Omaha Tribal Court, Omaha Tribe of Nebraska, Appellant.

No. 89–1469.

United States Court of Appeals,
Eighth Circuit.

Submitted: Nov. 17, 1989.

Decided March 16, 1990.

Daniel W. Evans, Omaha, Neb., for appellant.

Clarence E. Mock, Oakland, Neb., for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and McMILLAN,* District Judge.

LAY, Chief Judge.

On August 24, 1987, Ann Walker, a member of the Omaha Tribe of Nebraska, was driving on a public road within the boundaries of the Omaha Indian Reservation when she struck and killed two persons, also members of the Omaha Tribe. The tribe brought two counts of criminal homicide against Walker in the Omaha Tribal Court pursuant to Title III, Section 3–4–8

---

* The HONORABLE JAMES B. McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.

of the Omaha Tribal Code.[1] After the tribal court denied her motion to dismiss for lack of subject matter jurisdiction, Walker applied to federal district court for a writ of habeas corpus pursuant to 25 U.S.C. § 1303 (1982). The district court granted the writ, ruling that Walker's charged offense lay within the exclusive jurisdiction of the federal courts under the Major Crimes Act, 18 U.S.C. § 1153 (1982).[2] The tribe appeals; we reverse and vacate the grant of the writ.

**Statutory Background**

Congress enacted the Major Crimes Act in 1885. In *Ex parte Crow Dog*, 109 U.S. 556, 572, 3 S.Ct. 396, 406, 27 L.Ed. 1030 (1883), the Supreme Court held that in the absence of explicit congressional authorization a federal court lacked jurisdiction to try an Indian for a crime committed against another Indian within Indian country. Congress responded by extending certain provisions of federal enclave law, including the offense of manslaughter, to conduct by Indians against other Indians within Indian country. 18 U.S.C. § 1153; *see also Keeble v. United States*, 412 U.S. 205, 209–10, 93 S.Ct. 1993, 1996–97, 36 L.Ed.2d 844 (1973). In passing the Major Crimes Act, Congress intended that no Indians would go unpunished for committing what Congress considered to be the most serious crimes. *Id.*

In 1953, Congress altered this jurisdictional grant. *See* Act of Aug. 15, 1953, ch. 505, 67 Stat. 588, *codified in part at* 18 U.S.C. § 1162 (Public Law 280). Public Law 280 gave certain states the right to exercise criminal jurisdiction over specified Indian country within their respective borders "to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory * * *." 18 U.S.C. § 1162(a).[3] Public Law 280 specifically granted the State of Nebraska the right to exercise criminal jurisdiction over all Indian country within its borders. *Id.*[4] Congress expressly repealed the Major Crimes Act insofar as it applied to those areas covered by 18 U.S.C. § 1162(a). 18 U.S.C. § 1162(c).

In 1968, Congress once again altered the jurisdictional scheme by authorizing the United States to "accept retrocession by any State of all or any measure of criminal or civil jurisdiction, or both, acquired by such State pursuant to [Public Law 280]." Act of April 11, 1968, Title IV, § 403, 82 Stat. 79, *codified at* 25 U.S.C. § 1323(a). The United States Secretary of Interior was designated by the President to accept such retrocession on behalf of the United States. Exec. Order No. 11,435, 33 Fed. Reg. 17,339 (1968). Pursuant to 25 U.S.C. § 1323(a), the Nebraska legislature passed

1. Section 3–4–8 provides: "(1) A person is guilty of criminal homicide if he purposely, knowingly, recklessly or negligently causes the death of another human being."

2. 18 U.S.C. § 1153 provides in relevant part:
    Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
    The district court found that criminal homicide as defined by the Omaha Tribal Code was equivalent to the federal offense of involuntary man-

slaughter, which is defined by 18 U.S.C. § 1112(a) (1982).

3. It has long been held that the states are severely limited in exercising jurisdiction over Indians within Indian country absent authorization by Congress. *E.g., McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 168–69, 93 S.Ct. 1257, 1260–61, 36 L.Ed.2d 129 (1973); *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 557, 8 L.Ed. 483 (1832); F. Cohen, *Cohen's Handbook of Federal Indian Law* 349–52 (1982).

4. Nebraska was one of the so-called "mandatory" states which was authorized to exercise jurisdiction without the need for further legislative steps. The other "mandatory" states were California, Minnesota, Oregon, Wisconsin, and Alaska. 18 U.S.C. § 1162(a). Public Law 280 gave all other states the option of acquiring jurisdiction by affirmative legislation. *See* Pub.L. 280, § 7, 67 Stat. 588, 590, *repealed by* Act of Apr. 11, 1968, Pub.L. 90–284, § 403(b), Title IV, 82 Stat. 73, 79.

674

a resolution offering to retrocede to the United States all criminal jurisdiction over offenses committed by Indians in Indian country located in Thurston County, Nebraska (which included both the Omaha and Winnebago Indian Reservations). Res. 37, 80th Neb.Leg. (1969), *quoted in full in Omaha Tribe v. Village of Walthill,* 334 F.Supp. 823, 827 n. 6 (D.Neb.1971), *aff'd per curiam,* 460 F.2d 1327 (8th Cir.1972), *cert. denied,* 409 U.S. 1107, 93 S.Ct. 898, 34 L.Ed.2d 687 (1973). However, Nebraska's offer contained an exception: "That the retrocession of jurisdiction * * * shall not apply to any offenses involving the operation of motor vehicles on public roads or highways." *Id.* The Secretary of Interior accepted this offer of retrocession as to the Omaha Tribe, and the retrocession was upheld as valid by this court. *Omaha Tribe,* 460 F.2d at 1328.[5]

**Discussion**

■ An Indian tribe's power to punish members who commit crimes within Indian country is a fundamental attribute of the tribe's sovereignty. *United States v. Wheeler,* 435 U.S. 313, 326–27, 98 S.Ct. 1079, 1087–88, 55 L.Ed.2d 303 (1978); *Talton v. Mayes,* 163 U.S. 376, 379–80, 16 S.Ct. 986, 987–88, 41 L.Ed. 196 (1896). Unlike certain other aspects of tribal sovereignty, this power was not "implicitly lost by virtue of [the tribe's] dependent status." *Wheeler,* 435 U.S. at 326, 98 S.Ct. at 1087. This power may be limited only by a treaty or federal statute. *Id.* at 323, 98 S.Ct. at 1086; *United States v. Quiver,* 241 U.S. 602, 605–06, 36 S.Ct. 699, 700–01, 60 L.Ed. 1196 (1916). Walker argues, and the dis-

trict court held, that the Major Crimes Act imposes such a limit by divesting the tribal court of jurisdiction over offenses that are equivalent to the enumerated "Major Crimes."[6]

■ We need not decide this issue, however. In holding that the Major Crimes Act places a limitation on tribal jurisdiction, the district court reasoned that the federal jurisdiction authorized by the Major Crimes Act extends to Walker's conduct. The tribe, and the United States as amicus curiae, urge that this premise is erroneous because Walker's conduct involved a motor vehicle on a Nebraska public road and is therefore a matter that was never retroceded back to the federal government pursuant to 25 U.S.C. § 1323(a). We agree.

Because Nebraska withheld motor vehicle matters from its offer of retrocession, the federal government's acceptance of retrocession did not reestablish Major Crimes Act jurisdiction over such matters. Walker stipulated that the offense with which she is charged involves the "operation of a motor vehicle on public roads or highways" within the meaning of the exception contained in Resolution 37. We agree with the United States that Nebraska's retention of jurisdiction over *"any offenses* involving the operation of motor vehicles * * *,"* cannot be read as limiting the exception to minor traffic offenses. Moreover, even if we were to find that the exception applies merely to offenses that specifically include operation of a motor vehicle as an element,[7] this would not affect our conclusion because Nebraska has specifically enacted a

---

5. In *Omaha Tribe* the United States District Court for the District of Nebraska held that 25 U.S.C. § 1323(a) authorized the United States to accept any part of the jurisdiction offered to it by Nebraska. Therefore, the court upheld the power of the Secretary of Interior to accept the Nebraska legislature's offer to retrocede jurisdiction over the Omaha Tribe and to reject the legislature's offer to retrocede jurisdiction over the Winnebago Tribe. *Omaha Tribe,* 334 F.Supp. at 835. We upheld the district court's ruling in a per curiam opinion. 460 F.2d at 1328.

6. The Supreme Court has expressly acknowledged this issue on three occasions, but has not yet resolved it. *See United States v. John,* 437

U.S. 634, 651 n. 21, 98 S.Ct. 2541, 2550 n. 21, 57 L.Ed.2d 489 (1978); *Wheeler,* 435 U.S. at 325 n. 22, 98 S.Ct. at 1087 n. 22; *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 203 n. 14, 98 S.Ct. 1011, 1018 n. 14, 55 L.Ed.2d 209 (1978).

7. Counsel for the tribe stated at oral argument that the County Attorney for Thurston County, Nebraska, has construed the exception contained in Resolution 37 to apply only to offenses that include operation of a motor vehicle as an element. We find no support in the record or in Nebraska law for this assertion. In any event, the extent of federal jurisdiction reestablished by 25 U.S.C. § 1323(a) is an issue of federal law.

statute penalizing "motor vehicle homicide." Neb.Rev.Stat. app. § 28–306 (1985).[8] Therefore, even if the Major Crimes Act could be construed as imposing a limitation on tribal jurisdiction, the limitation cannot affect this case. The Major Crimes Act simply does not apply here.

■ Although Walker's brief cites only the Major Crimes Act as an obstacle to tribal jurisdiction, we agree with the district court's conclusion that Public Law 280 did not itself divest Indian tribes of their sovereign power to punish their own members for violations of tribal law. Nothing in the wording of Public Law 280 or its legislative history precludes concurrent tribal authority. F. Cohen, *Cohen's Handbook of Federal Indian Law* 344. As both the Supreme Court and this court have made clear, limitations on an Indian tribe's power to punish its own members must be clearly set forth by Congress. *Quiver*, 241 U.S. at 606, 36 S.Ct. at 700; *Greywater v. Joshua*, 846 F.2d 486, 489 (8th Cir.1988); *see also White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2583–84, 65 L.Ed.2d 665 (1980) (ambiguities in federal law are generously construed in favor of tribal sovereignty). We find no such clear expression of congressional intent in Public Law 280.

## Conclusion

No applicable federal law ousts the Omaha Tribal Court of jurisdiction in this case. We therefore find no basis for the district court's issuance of the writ of habeas corpus to prohibit the tribe's prosecution of Walker. The order of the district court is reversed and the writ is vacated.

---

**8.** Section 28–306 reads as follows:

28–306. Motor vehicle homicide; penalty. (1) A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide.

(2) Except as provided in subsection (3) of this section, motor vehicle homicide is a Class I misdemeanor.

(3) If the proximate cause of the death of another is the operation of a motor vehicle in violation of section 39–669.01, 39–669.03, or 39–669.07, motor vehicle homicide is a Class IV felony.