IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

COHRS V. BRUNS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DAN COHRS, APPELLEE,

V.

LANA SUE BRUNS, APPELLANT, AND DOUGLAS COUNTY, NEBRASKA,
INTERVENOR-APPELLEE, AND KELLE J. WESTLAND,
GUARDIAN AD LITEM, APPELLEE.

Filed May 1, 2018.    No. A-17-574.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Stephanie Weber Milone, of Milone Law Office, for appellant.

Jon J. Puk, of Woodke & Gibbons, P.C., L.L.O., for appellee Dan Cohrs.

Donald W. Kleine, Douglas County Attorney, and Sandra Connolly for intervenor-appellee.

Benjamin M. Belmont and Wm. Oliver Jenkins, of Brodkey, Peebles, Belmont & Line, L.L.P., for appellee guardian ad litem.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

INTRODUCTION

Lana Sue Bruns and Dan Cohrs each challenged the other's compliance with custody and parenting time orders through numerous contempt proceedings. During the course of the proceedings, the district court for Douglas County appointed a guardian ad litem (GAL) for their minor child and an attorney for the GAL. The GAL and her attorney submitted applications for

- 1 -

fees, and the court awarded fees to the GAL and her attorney, directing Lana and Dan to each pay half of the fees. On appeal, Lana challenges the award of fees, asserting that the fee applications were not timely and were waived. Alternatively, she challenges the amount of fees the court awarded, the court's division of the fees, and the court's finding that she was not indigent such that the county would be responsible for her fees. We affirm.

BACKGROUND

Lana and Dan are parents of a daughter, Karsten, born in June 2003. On March 10, 2005, the district court entered a paternity decree that awarded the parties joint legal custody of Karsten. The court awarded Lana primary physical care subject to Dan's parenting time rights as specified in the parenting plan and ordered Dan to pay child support. In October 2010, Lana initiated modification proceedings, seeking certain restrictions on Dan's parenting time, an increase in his child support obligations, and a requirement that he pay a portion of Karsten's school tuition. Dan counterclaimed, seeking modifications in custody and parenting time. Lana later amended her complaint for modification, seeking permission to remove Karsten from Nebraska to Colorado. During the course of the modification proceedings, which spanned nearly 4 years, both parties filed numerous contempt motions. In July 2014, the district court entered a final order of modification, awarding Lana sole legal and physical custody of Karsten while granting Dan expanded parenting time. The court denied Lana's request to remove Karsten from Nebraska to Colorado. The modification order also increased Dan's child support payment retroactively, denied Lana's request that Dan pay one-half of Karsten's private school tuition, expressly terminated the restrictions contained in the temporary order regarding Dan's parenting time, and ordered the parties to provide Karsten with counseling for a period not to exceed 1 year from the date of the order.

Both parties appealed the modification order, and this court affirmed the order with the exception of certain provisions regarding child support. See *Cohrs v. Bruns*, No. A-14-740, 2015 WL 8267953 (Neb. App. Dec. 8, 2015) (selected for posting to court website). The district court modification order and our opinion both detail the highly contentious nature of the relationship between Lana and Dan, which we do not repeat here.

As noted previously, Lana and Dan filed numerous contempt proceedings against each other to enforce the terms of the original and modified orders. On October 8, 2014, after Lana filed her 12th application and affidavit for contempt, the district court entered an order on its own motion, finding the parties' behavior and continued litigation had caused irreparable harm to Karsten. To prevent further damage, the court appointed Kelle J. Westland as GAL and Benjamin M. Belmont as attorney for the minor child for "the current open applications for orders to show cause filed by each party and for any future such applications which may be filed by either party." The court instructed the GAL to find a counselor or psychologist to treat Karsten. The order directed each party to make two deposits of $1,000 with the clerk of the district court for payment to the GAL and the attorney for the minor child. Further, the court ordered both the GAL and the attorney for the minor child to submit billing invoices for their work on a 60-day basis, which the court would review upon submission of a motion or application for payment. Three applications for orders to show cause were pending at the time of the court's order. Following this order, Dan filed his 12th application for contempt.

On December 3, 2014, Westland filed a motion for clarification, asking whether the court's October 8 order appointed Belmont as attorney for the minor child or as attorney for the GAL. Westland noted that until that point Belmont had worked with her and had not met Karsten. Without a hearing, the court entered an order on December 9, clarifying that Belmont was appointed as attorney for the GAL and modifying its October 8 order accordingly.

Trial was held on certain contempt motions in September 2014 and January 2015. On February 18, 2015, the district court entered orders finding Dan in contempt for failing to comply with a life insurance provision in the decree and finding Lana in contempt for interfering with Dan's parenting time and failing to cooperate with Karsten's court-ordered counseling. Lana appealed, challenging the district court's authority to appoint the GAL and attorney on its own motion without notice to the parties. Lana also assigned error to the court's findings on contempt. We affirmed the district court in all respects. See *Cohrs v. Bruns*, No. A-15-222, 2016 WL 1104859 (Neb. App. March 22, 2016) (selected for posting to court website).

Between October 14, 2014, and October 11, 2016, Lana and Dan collectively filed nine contempt applications. On January 24, 2017, after the conclusion of the contempt proceedings, Westland filed an application for allowance of fees with an attached invoice, which she amended on February 21. Belmont filed an application for allowance of fees on February 18. At a February 9 hearing on Westland's initial application, Lana requested an opportunity to present evidence on the reasonableness of Westland's and Belmont's fees, as well as evidence that she was indigent such that the county should be responsible for the fees. The court granted her request, scheduling an evidentiary hearing for March 14.

Westland testified at the evidentiary hearing that she has practiced law since 1983, specializing in family law. She has served as an appointed GAL at least 100 times. She catalogued the time and activities for which she billed in this case using an excel spreadsheet. Westland did not meet with Karsten until 5 months after the court appointed her. As Karsten's GAL, Westland spoke with Lana and Dan, Karsten's school principal, and all the lawyers involved. She first spoke with Karsten's court-appointed therapist 5 months after the court appointed her, and he told her that he had not provided counseling to Karsten since July of 2014. Westland reviewed all the pleadings, attended hearings, and watched appellate oral arguments. But she did not testify or offer evidence at any of the contempt proceedings.

Westland submitted her first invoice to the court after representing Karsten for 60 days, but the court stayed the invoice pending appeal. Westland did not submit another invoice to the court until she filed the present application. She offered two itemized lists detailing her and Belmont's work associated with Lana and Dan's litigation, which the court received into evidence. Westland's fees totaled $11,887.95, and Belmont's fees totaled $5,902.50.

Lana testified that although she was employed with United Airlines when the court entered the October 8, 2014, order, she failed to submit the $1,000 payments for the GAL and attorney to the clerk of the district court as the order required. Lana was laid off from United Airlines in the spring of 2015. She received a severance package that, among other things, provided her with 6 months of wages based on a 40-hour workweek plus free flights for the rest of her life. She has not applied for unemployment assistance since losing her job. She has applied for several positions, but has received no job offers.

At the time of the hearing, Lana's only source of income was $1,250 in monthly child support payments, which she testified was less than her monthly expenses. The court received an exhibit detailing Lana's monthly expenses, which totaled $3,307.30. Lana owns a house worth $120,000, encumbered by an approximately $60,000 mortgage. She has retirement savings, a car worth $2,000, and approximately $2,000 in savings. Lana recently received a $30,000 back child support payment from Dan, which she used to pay attorney fees and maintain her lifestyle. She has no other investments.

Dan testified that he also received a severance package when he was laid off from his employment with United Airlines in May of 2015. Since then, although he has looked for other employment, his income has come from a farm that he owns with his brother. At the time of the hearing, Dan was taking a $3,000 draw each month against future crop income. He owns a home and an interest in some farmland, which were both encumbered by mortgages. Dan complied with the October 8, 2014, order by making two payments of $1,000 to the clerk of the district court. Dan asked the court to allocate 80 percent of the fees to Lana and 20 percent to him.

The district court entered an order on May 31, 2017, finding that the fees Westland and Belmont requested were reasonable and that their services were necessary and beneficial to the court. The court awarded $11,887.95 in fees to Westland and $5,902.50 in fees to Belmont. The court specifically noted the $30,000 payment of back child support Lana recently received in analyzing Lana's financial situation. The court found Lana's expenses for the necessities of life totaled $1,753, which is only $500 more than her child support income. Considering her other assets, the court found she was not indigent. The court ordered Lana and Dan to respectively pay Westland $5,943.97 and $5,943.98 and to each pay Belmont $2,951.25. The court directed the clerk of the district court to disperse the money Dan paid in compliance with the October 8, 2014, order to Westland and Belmont, reducing the fees Dan owed to each by $1,000.

Lana appeals.

ASSIGNMENTS OF ERROR

Lana assigns, reordered and restated, that the district court erred (1) in awarding fees to the GAL and her attorney, (2) in its determination of the amount of fees owed, (3) in dividing the fees equally between the parties, and (4) in failing to find her indigent under Neb. Rev. Stat. § 42-358(1) (Reissue 2016).

STANDARD OF REVIEW

Allowance, amount, and allocation of a GAL fee are matters within the initial discretion of the trial court, necessarily involve consideration of the equities and circumstances of each particular case, and will be set aside on appeal only when there appears to be an abuse of discretion by the trial court. *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

A finding of indigence under § 42-358(1) is a matter within the initial discretion of the trial court, and such a finding will not be set aside on appeal in the absence of an abuse of discretion by the trial court. *White v. White*, 293 Neb. 439, 884 N.W.2d 1 (2016). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id.*

ANALYSIS

*Award of Attorney Fees.*

Lana assigns that the district court erred in awarding attorney's fees to the GAL and her attorney. She makes several arguments in support of this assignment. As discussed below, we find Lana's arguments to be without merit.

First, Lana argues that the fee applications of the GAL and her attorney were not filed, or determined, prior to the entry of the judgment on each separate contempt proceeding. As a result, Lana asserts that the fee applications were untimely and that the district court erred in awarding fees after the final contempt orders. Lana cites *McCaul v. McCaul*, 17 Neb. App. 801, 771 N.W.2d 222 (2009) for the proposition that GAL fees, which are considered costs, must be determined prior to the entry of a final order. Because the facts of *McCaul* are distinguishable, Lana's argument is misplaced.

The district court in *McCaul* entered an order modifying custody. A few days later, it entered an order requiring the county to pay the GAL fees, but set a further hearing to determine the parties' reimbursement to the county. The father appealed prior to that hearing. The Nebraska Supreme Court dismissed the appeal, finding that because the issue of fee reimbursement was reserved for further hearing, the order appealed was not a final order. *Id.*

Here, given the ongoing nature of their appointment because of the numerous contempt proceedings, Westland and Belmont did not request fees during each contempt proceeding. And the order appointing them did not require them to do so. Unlike *McCaul*, the district court in this case did not address fees in the various contempt judgments. Because the issue of fees was not raised during the previous contempt judgments, those judgments did not preclude subsequent recovery of fees for the GAL and her attorney.

Lana also argues, citing *Murray v. Stine*, 291 Neb. 125, 864 N.W.2d 386 (2015), that the silence of the various contempt orders on the issue of fees should be construed as a denial of fees. Although *Murray* recites this proposition of law, its facts do not support Lana's argument.

Some of the parties in *Murray* made requests for attorney fees under Neb. Rev. Stat. § 25-824 (Reissue 2008), which were set for hearing while summary judgment motions were pending. Before the fee hearing occurred, the district court entered orders granting summary judgment, which were appealed. Because there had not been a ruling on the attorney fees requests, the Nebraska Supreme Court found there was not a final order and dismissed the appeal. The Supreme Court found that the court's silence on the issue of fees could not be considered a denial of the request for fees under the circumstances present in *Murray*. The Supreme Court noted, however, that where attorney fees are requested in the defendants' answers, the court's silence on the issue can be construed as a denial for purposes of determining whether the appealed order is a final order. See, *NEBCO, Inc. v. Murphy*, 280 Neb. 145, 784 N.W.2d 447 (2010); *Olson v. Palagi*, 266 Neb. 377, 665 N.W.2d 582 (2003). In the present case, throughout the various contempt actions, neither the parties nor the GAL or her attorney raised the issue of the fees. As such, the silence in the contempt orders on the issue of fees should not be construed as a denial.

Next, Lana argues that the fee applications were untimely, pointing to the provision in the October 8, 2014, order requiring the submission of fee invoices on a 60-day basis. But the order did not connect Westland or Belmont's services to a specific contempt proceeding. Instead, the

order appointed them to serve during "all open applications for orders to show cause" and "any future such applications which may be filed by either party." Given the number of contempt proceedings, the district court did not err in allowing Westland and Belmont to submit their applications for fees at the conclusion of all of the contempt proceedings, as opposed to submitting invoices on a 60-day basis. We conclude the district court did not abuse its discretion in awarding fees to Westland and Belmont upon their application.

Lana also argues that the GAL and her attorney did not perform the tasks assigned to them in the October 8, 2014, order, and therefore, the court should not award their fees. She focuses on Westland's failure to contact Karsten's court-appointed therapist until 5 months after her appointment and certain misunderstandings about the nature of her work. Our review of the record shows that both Westland and Belmont performed the functions assigned to them. Although there was a gap in treatment for Karsten, Westland did contact an appropriate counselor or therapist as required by the order. Westland testified to the nature of her work, and the court specifically found her actions to be beneficial to the court in its decisionmaking. In view of the GAL's work and the work of the GAL's attorney, we find the district court did not abuse its discretion in awarding fees to them.

*Amount of Attorney Fees.*

Lana assigns the district court erred in the amount of attorney fees it awarded to the GAL and her attorney. She argues that because the GAL and her attorney failed to perform the work assigned to them, the court should not have awarded the amount of fees to them that it did.

The touchstone for awarding GAL fees is reasonableness, both of the necessity of the services rendered and of the fees awarded. *In re interest of Antone C. et al.*, 12 Neb. App. 152, 669 N.W.2d 69 (2003). Courts evaluate the reasonableness of GAL fees under the same standard that they evaluate other attorney fees. *Id.* To determine the value of legal services rendered by an attorney, for purposes of an attorney fee award, it is proper to consider the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018).

Westland testified that the activities for which she billed were each required to further the best interests of her client. And both Westland and Belmont attached a list to their fee applications showing the time and activities for which they billed. Lana provided no evidence that either Westland's or Belmont's hourly rate was unreasonable for the services they provided. The district court found that their fees were reasonable and necessary services directly related to this case and that their services were beneficial to the court and Karsten.

Based upon our review of the record, we find no abuse of discretion in the amount of fees the district court awarded to Westland and Belmont.

*Division of Attorney Fees.*

Lana assigns the district court erred in equally dividing the GAL and attorney fees between the parties. She argues that Dan has a greater ability to pay than she does. The record reflects the

parties share responsibility for the work of the GAL and her attorney by virtue of their numerous contempt applications. Therefore, we conclude the district court did not abuse its discretion in dividing the fees equally between Lana and Dan.

*Indigence.*

Lana assigns the district court erred in finding she was not indigent under § 42-358(1) such that Douglas County should be responsible for the GAL fees. She argues that she has been unable to find employment after losing her job in 2015 and that her monthly expenses currently exceed her child support income. Lana asserts that if the court requires her to pay half of Westland's and Belmont's expenses, she will be unable to afford the necessities of life, possibly forcing her to sell her house, car, or both. As discussed below, we find the district court did not abuse its discretion in finding Lana is not indigent under § 42-358(1).

After a court finds a party indigent, § 42-358 allows the court to order the county to pay the GAL fees assigned to that party. It provides, in relevant part, as follows:

(1) The court may appoint an attorney to protect the interests of any minor children of the parties. Such attorney shall be empowered to make independent investigations and to cause witnesses to appear and testify on matters pertinent to the welfare of the children. The court shall by order fix the fee, including disbursements, for such attorney, which amount shall be taxed as costs and paid by the parties as ordered. If the court finds that the party responsible is indigent, the court may order the county to pay the costs.

For purposes of § 42-358(1), a person is indigent if he or she is unable to pay the GAL or attorney's fees without prejudicing, in a meaningful way, his or her financial ability to provide the necessities of life, such as food, clothing, shelter, and medical care for himself or herself or his or her legal dependents. *White v. White*, 293 Neb. 439, 884 N.W.2d 1 (2016). A district court's determination of indigence should depend upon a party's finances at the time of the indigence hearing. *Id.*

Although the court specifically found that Lana's expenses for the necessities of life exceed her monthly income by $500 at the time of the indigence hearing, the record reflects that Lana had the means to pay Westland's and Belmont's fees without making her unable to afford the necessities of life. The district court noted that her child support income, together with her assets and the more than $30,000 in back child support she recently received were sufficient financial means to pay for both the necessities of life and the awarded fees. Thus, we find the district court did not abuse its discretion in finding that Lana was not indigent.

## CONCLUSION

We conclude that the district court did not abuse its discretion in awarding fees to Westland and Belmont, in its findings concerning the amount of fees, in its division of the fees, or in its finding that Lana is not indigent for the purpose of § 42-358(1).

AFFIRMED.